**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

ADAM COLLINS,

      **Plaintiff,**

         v.

STAGHORN PETROLEUM II, LLC,

      **Defendant.**

**CIVIL NO. 22-203 (JDR)**

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge[1]

    Pending before the Court is Defendant Staghorn Petroleum II, LLC's ("Defendant" or "Staghorn") *Motion for Summary Judgment*. (Docket No. 27). For the reasons outlined below, the Court hereby **GRANTS** Staghorn's *Motion for Summary Judgment*. Judgment dismissing this action shall be entered accordingly.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

    These proceedings stem from Plaintiff Adam Collins' ("Plaintiff" or "Mr. Collins") termination by his former employer, Staghorn. (Docket No. 2). Staghorn is an Oklahoma-based oil and gas company. (Docket No. 27 at 1). Mr. Collins began working for Staghorn as a geologist in August 2016, and continued working at Staghorn until September 2019, when he was involuntarily recalled into active duty by the United States Navy (the "Navy"). (Docket

---

[1] United States District Judge for the District of Puerto Rico, sitting by designation.

Nos. 2 ¶¶ 9, 14-15; 27 at 2 and 42 at 2). In February 2020, while
Mr. Collins was still on active duty, Staghorn notified him that
his position within the company had been eliminated. (Docket Nos.
2 ¶ 16 and 42-2 ¶ 12). Mr. Collins detached from the Navy in
September 2020 and requested reinstatement at Staghorn in October
2020 pursuant to the Uniformed Services Employment and
Reemployment Rights Act ("USERRA"). (Docket No. 2 ¶¶ 17-18).
Staghorn denied his request in November 2020, terminating him and
offering him a severance package. Id. ¶ 19.

Mr. Collins asserts that Staghorn had positions available
"for which Plaintiff was qualified to perform the essential duties
and for which Plaintiff had [the] vested right to bump the
employee(s) serving in the position(s)." Id. ¶ 20. He alleges
Staghorn discriminated against him because of his military service
and violated USERRA by terminating him and allowing other Staghorn
employees to remain in roles that Mr. Collins could have filled.
Id. ¶¶ 22-24. Mr. Collins then filed a complaint against Staghorn
with the Department of Labor for an alleged USERRA violation, which
was dismissed in March 2021. Id. ¶ 22.

Mr. Collins filed suit against Staghorn on May 6, 2022.
(Docket No. 2). The *Complaint* brings two USERRA claims: (i) denial
of reemployment in violation of 38 U.S.C. §§ 4311-4312, and (ii)
discrimination in violation of 38 U.S.C. § 4311. Id. at 5-6. Mr.
Collins seeks a declaration that Staghorn violated his rights,

equitable relief in the form of back salary, benefits, and front pay. Id. at 6. He also seeks costs and expenses, attorney's fees and costs, and damages, including an assessment of damages to "compensate for any tax consequences" of a favorable judgment. Id. at 6-7.

Staghorn filed an *Answer* on July 14, 2022. (Docket No. 5). On January 23, 2023, Staghorn filed the *Motion for Summary Judgment*, arguing that there is no evidence that Mr. Collins was denied reemployment or terminated due to his military service, particularly as the events giving rise to this case occurred "during one of the worst economic crises in oil and gas history." (Docket No. 27 at 1). Staghorn also argued that Mr. Collins failed to timely respond to its Requests for Admission, thus establishing that he was not denied reemployment or other benefits due to his military service. Id. at 7. Mr. Collins filed a *Response* on March 2, 2023, arguing that he sufficiently alleged that his military service led to his termination and properly denied Staghorn's Requests for Admission. (Docket No. 35 at 12-14). Staghorn filed a *Reply* on March 6, 2023, asserting that Mr. Collins did not establish a genuine dispute of material fact to escape summary judgment. (Docket No. 37).

## II.  LEGAL STANDARD

### A. Summary Judgment Under Fed. R. Civ. P. 56

Summary judgment is proper if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citing Anderson, 477 U.S. at 242).

The movant "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." Id. at 670-71 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). Next, the burden shifts to the non-movant "to go beyond the pleadings" and provide "specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." Id. at 671 (citations and internal quotation marks omitted). Specific facts can be shown "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." Id. (citing Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992)). A party claiming that a fact "cannot be or is genuinely disputed" must

support its assertion by "citing to particular parts of materials in the record," showing that the cited materials "do not establish the existence of a genuine dispute," or showing that the "adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). When a party does not "properly support its assertion that a fact is disputed, that fact may be considered undisputed for purposes of summary judgment." Graham v. City of Lone Grove, Okla., Civ. No. 19-298, 2022 WL 2070607, at *2 n.6 (E.D. Okla. June 8, 2022) (citing Fed. R. Civ. P. 56(e)).

A court must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment." Thomas, 986 F.2d at 1024 (citations omitted). A court should review the record *in its entirety* and refrain from making credibility determinations or weighing the evidence. *See* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000); Fed. R. Civ. P. 56(c)(3) (a court "need only consider cited materials" but can "consider other materials in the record."). A court should "give credence to the evidence favoring the nonmovant" as well as "uncontradicted and unimpeached" evidence supporting the moving party, "at least to the extent that that evidence comes from disinterested witnesses." Reeves, 530 U.S. at 151 (citation omitted). Summary judgment may be proper if the nonmovant's case solely relies on evidence that is "merely colorable" or "not significantly probative." Whatley v. City of Bartlesville, Okla.,

932 F.Supp. 1300, 1302 (N.D. Okla. 1996) (citation omitted). The existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Scott v. Harris, 550 U.S. 372, 379 (2007) (quotation omitted).

Summary judgment motions filed in the Northern District of Oklahoma are subject to the Local Civil Rules. Local Civil Rule 56.1 requires that parties include a section in their filings stating their proposed material facts in "concise, numbered paragraphs" with accompanying citations. L. CV. R. 56.1(c), (e). A party's response brief to a motion for summary judgment must include a section responding "to the facts that the movant contends are not in dispute and shall state any fact that is disputed." L. CV. R. 56.1(c). "All material facts" in the movant's statement of material facts will be admitted for summary judgment purposes "unless specifically controverted by the statement of material facts of the opposing party, using the procedures set forth in this rule." Id.; see Fed. R. Civ. P. 56(e)(2); Bell v. BOKF, NA, Civ. No. 12-28, 2013 WL 1309411, at *2 (N.D. Okla. Mar. 26, 2013) (admitting the movant's statement of undisputed material facts when the non-movant did not comply with Local Civil Rule 56.1).

### III. FINDINGS OF FACT

To make its findings of fact, the Court reviewed Defendant's *Motion for Summary Judgment*, Plaintiff's *Response*, Defendant's

*Reply*, the exhibits accompanying these documents, and the parties' other filings in the instant case. (Docket Nos. 2; 27; 27-1; 27-2; 27-3; 27-4; 27-5; 27-6; 27-7; 42; 42-1; 42-2; 42-3; 42-4; 42-5; 42-6 and 43). The Court makes the following findings of fact after crediting only **material** facts that are **properly supported** by a record citation and uncontroverted.[2]

1. Staghorn hired Mr. Collins on or about August 26, 2016, offering him an annual salary of $210,000 alongside a $150,000 commitment and a 3 percent ownership stake in Staghorn. (Docket No. 2 ¶ 9). He remains an equity owner of Staghorn. (Docket Nos. 27 at 4 and 42 at 2-3).

2. Mr. Collins titles his job as "Principal Geoscientist," "Principal Geologist," or "Geology Manager." (Docket Nos. 2 ¶ 9; 42 at 2 and 42-6).

3. Staghorn titles Mr. Collins' job as a "Development/Principal Geologist." (Docket No. 27 at 3).

4. Mr. Collins' job responsibilities included: working with geologists, landmen, and engineers to identify locations for drilling wells; identifying and mitigating drilling hazards; identifying horizontal landing targets and pay intervals; preparing geo-prognoses to assist drilling teams with well design; reviewing and interpreting mud logs

---

[2] References to a specific Finding of Fact shall be cited in the following manner: (Fact ¶ _).

and other logs when drilling; landing and geo-steering for horizontal drilling wells; and dealing with third-party contractors to complete these tasks. (Docket No. 27 at 3). He was also "the primary geologist that constructed and defined the Meramec interval over [Staghorn's] primary acreage position" between 2016 and 2019 and assembled sales packages for Staghorn's assets.[3] (Docket No. 42-2 ¶¶ 6, 17).

5. In Staghorn's letter of offer for employment, dated July 20, 2016, the company's chief executive officer acknowledged that Staghorn was aware of Mr. Collins' reserve status with the Navy. (Docket No. 2 ¶ 10).

6. Staghorn supported Mr. Collins' military obligations by accommodating his "frequent absences" throughout the course of his employment. (Docket Nos. 27 at 4 and 42 at 3).

7. Around May 2017, Mr. Collins switched job titles, keeping the same annual salary while his commitment increased to $250,000 and his ownership stake grew to 5 percent. (Docket No. 2 ¶ 12).

---

[3] The Meramec interval is part of the Anadarko Basin of central Oklahoma and is a site of "increased exploration and production of oil and gas" in the region. *See* William Neely et al., *Seismic-based characterization of reservoir heterogeneity within the Meramec interval of the STACK play, Central Oklahoma*, 9 Interpretation T79, abstract (Feb. 2021).

8. During the spring of 2019, Staghorn hired Mark Sutcliffe ("Mr. Sutcliffe") as a Geoscience Contractor. (Docket Nos. 2 ¶ 13 and 27 at 4).

9. Mr. Sutcliffe was an independent contractor "responsible for searching for new drilling and recompletion prospects" and "perform[ing] petrophysicist responsibilities for completing log evaluations." (Docket Nos. 27 at 4 and 42 at 7).

10. Mr. Sutcliffe's job responsibilities included "providing reservoir characterization products and research to identify production performance drives; reducing uncertainty in performance drivers; designing field development experiments for performance improvement and cost reduction; managing data collection projects; data processing; using geophysical data to create geological and geomechanical interpretations; and providing risk assessment and other support evaluations for acquisition activity." (Docket No. 27 at 4).

11. In May 2019, Staghorn shut down its drilling program. (Docket Nos. 27 at 5 and 42 at 4).

12. Mr. Collins submitted the following chart, which logs the monthly average price per barrel of oil in United States dollars between 2018 and 2020 and shows a decrease in the

price per barrel of oil after the fall of 2018. (Docket No. 42 at 4 n.1).[4]

| Year: | Jan. | Feb. | Mar. | Apr. | May | June | July | Aug. | Sept. | Oct. | Nov. | Dec. | Ave. Price |
|-------|------|------|------|------|------|------|------|------|-------|------|------|------|------------|
| 2018 | 63.70 | 62.23 | 62.73 | 66.25 | 69.98 | 67.87 | 70.98 | 68.06 | 70.23 | 70.75 | 56.96 | 49.52 | 64.94 |
| 2019 | 51.38 | 54.95 | 58.15 | 63.86 | 60.83 | 54.66 | 57.35 | 54.81 | 56.95 | 53.96 | 57.03 | 59.88 | 56.98 |
| 2020 | 57.52 | 50.54 | 29.21 | 16.55 | 28.56 | 38.31 | 40.71 | 42.34 | 39.63 | 39.40 | 40.94 | 47.02 | 39.23 |

13. On or about July 25, 2019, Mr. Collins was notified that he was subject to an involuntary recall and would be placed on active duty with the Navy; he immediately informed Staghorn of this. (Docket No. 2 ¶¶ 14-15).

14. Mr. Collins reported for active duty on September 13, 2019. (Docket Nos. 2 ¶ 15; 27 at 4 and 42 at 4).

15. While Mr. Collins was deployed, Staghorn voluntarily paid him the difference between his Staghorn salary and military pay until March 1, 2020. (Docket Nos. 27 at 4 and 42 at 4).

16. In January 2020, Staghorn implemented a 17 percent salary reduction for all employees, followed by an 18 percent reduction in April 2020. (Docket No. 27 at 5).

17. On February 28, 2020, Staghorn notified Mr. Collins that it had eliminated his position. Mr. Collins was one of at

---

[4]     *Petroleum & Other Liquids*, U.S. Energy Info., https://www.eia.gov/dnav/pet/hist/LeafHandler.ashx?n=PET&s=RWTC&f=M (last visited June 30, 2025). The Court takes judicial notice of the United States Energy Information Administration data in the chart pursuant to Fed. R. Evid. 201(b)(2) and (c)(1). *See* Sierra Club v. U.S. Env't Prot. Agency, 964 F.3d 882, 893 n.9 (10th Cir. 2020) (taking judicial notice of information on a government website).

least five employees laid off during this period (out of an eighteen-person employee roster), including Ken March ("Mr. March"), the company's Senior Vice President of Geology and Mr. Collins' direct supervisor. (Docket Nos. 2 ¶ 16; 27 at 5, 10 and 42 at 4).

18. This was part of a broader downsizing effort that ran through March 2020, where Staghorn implemented a 28 percent reduction of its workforce. (Docket No. 27 at 5).

19. Staghorn also placed the geology and engineering teams under one manager. (Docket No. 27 at 5).

20. Staghorn retained Mr. Sutcliffe as a Geoscience Contractor and a Geologist named Kelsey Putnam-Hughes ("Ms. Putnam"), whom Mr. Collins understood would cover his responsibilities at Staghorn while he was on active duty. (Docket Nos. 2 ¶ 16 and 42-2 ¶ 10).

21. Mr. Collins was detached from active duty and honorably discharged on September 12, 2020. (Docket No. 2 ¶ 17).

22. On October 30, 2020, Mr. Collins wrote Staghorn, requesting reinstatement to his previous job or a "greater" one. (Docket Nos. 2 ¶ 18; 27 at 5; 27-4 and 42 at 5).

23. On November 5, 2020, Staghorn denied Mr. Collin's request for reinstatement, asserting the denial was due to a companywide reduction in force. (Docket No. 2 ¶ 19).

24. Mr. Collins was offered a severance package of $16,160.00, which had to be accepted by November 16, 2020. (Docket Nos. 2 ¶ 19 and 27 at 5).

25. In June 2020, Staghorn's staff exchanged several emails regarding Mr. Collins' pay history and overpayment by Staghorn. A November 2022 email between Staghorn staff referenced the June 2020 emails and associated overpayment, calling them a "gem." (Docket No. 42-4).

26. Mr. Collins filed a USERRA complaint with the Department of Labor, which was dismissed in March 2021. (Docket Nos. 2 ¶ 22 and 27-7).

27. In March 2021, Staghorn hired Mr. Sutcliffe as a full-time employee with the title Vice President, Geology. This was the same position held by Mr. Collins' former manager, Mr. March. (Docket Nos. 2 ¶ 22 and 42 at 7).

## IV. APPLICABLE LAW

### A. Uniformed Services Employment and Reemployment Rights Act

USERRA, codified at 38 U.S.C. §§ 4301 *et seq.*, "was enacted to protect the rights of veterans and members of the uniformed services." Quick v. Frontier Airlines, Inc., 544 F.Supp. 2d 1197, 1206 (D. Colo. 2008) (citation omitted); *see* 38 U.S.C. § 4301(a). It establishes reemployment rights for individuals "who are absent from their jobs due to service in the armed forces" and "prohibits employers and prospective employers from discriminating and

retaliating against service members" due to their service or assertion of rights under USERRA. Quick, 544 F.Supp. 2d at 1207. USERRA "must be broadly construed in favor of its military beneficiaries." Id. (quoting Hill v. Michelin N. Am., Inc., 252 F.3d 307, 313 (4th Cir. 2001)).

   *i. Section 4311*

   Section 4311 prohibits discrimination and acts of reprisal against members of the uniformed forces. *See* 38 U.S.C. § 4311. It states that a person who is a member of a uniformed service shall not be denied, *inter alia*, reemployment by his employer or retention in employment because of his membership, performance of service, or obligation. *See* 38 U.S.C. § 4311(a). Employers may not "discriminate in employment against or take any adverse employment action or other retaliatory action" against any persons who take action to enforce or take advantage of USERRA's protections. 38 U.S.C. § 4311(b). An employer violates § 4311(a) if their action is motivated by a person's "membership, application for membership, service, application for service, or obligation for service in the uniformed services," "unless the employer can prove that the action would have been taken in the absence of such" status. 38 U.S.C. § 4311(c)(1). An employer engages in actions prohibited by USERRA under § 4311(b) if the person engaged in any of § 4311(b)'s protected activity and such activity is a motivating factor in the employer's action, "unless the employer can prove

that the action would have been taken in the absence of such"
activity. *See* 38 U.S.C. § 4311(c)(2). Section 4311(a)-(b) applies
to any position of employment. *See* 38 U.S.C. § 4311(d).

Although "[p]recedent interpreting and applying" USERRA is
"sparse," the Tenth Circuit has looked to USERRA's legislative
history and applied "the evidentiary scheme for cases arising under
the National Labor Relations Act" adopted by the Supreme Court
when evaluating § 4311 claims. Lewis v. Rite of Passage, Inc., 217
Fed. Appx. 785, 786 (10th Cir. 2007) (quoting Sheehan v. Dep't of
Navy, 240 F.3d 1009, 1013 (Fed. Cir. 2001)); *see also* Hamblin v.
City of Tulsa, Civ. No. 16-325, 2017 WL 4896947, at *5-7 (N.D.
Okla. Oct. 30, 2017); Quick, 544 F.Supp. 2d at 1209. An employee
bears the "initial burden of showing by a preponderance of the
evidence that [his or her] military service was a substantial or
motivating factor in the adverse employment action." Lewis, 217
Fed. Appx. at 786 (quoting Sheehan, 240 F.3d at 1013 (quotation
marks omitted)). The employee's service is a motivating factor if
the defendant "relied on, took into account, considered, or
conditioned its decision on that consideration." Id. (quoting
Coffman v. Chugach Support Servs., Inc., 411 F.3d 1231, 1238 (11th
Cir. 2005) (quotation marks omitted), *superseded by statute in
part on other grounds*). "[C]lose temporal proximity between an
employee's protected conduct and an employer's adverse employment
action" may also allow a court to infer the existence of a

retaliatory motive. Durant v. MillerCoors, LLC, 415 Fed. Appx. 927, 930 (10th Cir. 2011) (quoting Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1204 (10th Cir. 2008)).

After an employee satisfies his initial burden, the burdens of production and persuasion shift to the employer, who must prove the affirmative defense that "legitimate reasons, standing alone, would have induced the employer to take that same adverse action." Lewis, Fed. Appx. at 786-87 (quoting Sheehan, 240 F.3d at 1014).

At the summary judgment stage, an employee bringing a § 4311 claim "must establish a genuine issue of material fact as to whether his military status was a motivating factor in the adverse employment action to survive summary judgment." Id. at 787 (citation omitted); see also Hamblin, 2017 WL 4896947, at *7. The "employer must then establish not just that it had a legitimate basis for taking the adverse employment action, but as a matter of uncontroverted fact that it would have taken the adverse employment action regardless of the employee's military status." Lewis, Fed. Appx. at 787 (citation omitted); see also Hamblin, 2017 WL 4896947, at *7.

*ii. Section 4312*

Section 4312 details the reemployment rights of persons who serve in the uniformed services. See 38 U.S.C. § 4312. In contrast to § 4311, § 4312 claims do not require an employee to prove that the employer discriminated against him. See 20 C.F.R. § 1002.33

Civil No. 22-203 (JDR)                                                    16

(2025); <u>Bradberry v. Jefferson Cnty., Tex.</u>, 732 F.3d 540, 552 (5th

Cir. 2013). An employee seeking reemployment must satisfy the

following requirements: (i) his "absence from a position of

employment" must have been "necessitated by reason of service in

the uniform services"; (ii) he provided "advance written or verbal

notice" of his service" to his employer; (iii) the cumulative

length of his service-related absences does not exceed five years;

(iv) absent certain exceptions, he submits an application for

reemployment to his employer; and (v) he "must not have been

separated from service with a disqualifying discharge or under

other than honorable conditions." <u>Bradberry</u>, 732 F.3d at 546; 38

U.S.C. § 4312(a)(1)-(3); *see also* 20 C.F.R. § 1002.32.

       USERRA incorporates the "escalator principle" for

reemployment, which provides that an employer shall promptly place

a returning service member in "the position he would have held had

he remained continuously in his civilian employment." <u>Rogers v.</u>

<u>City of San Antonio</u>, 392 F.3d 758, 763 (5th Cir. 2004) (citing 38

U.S.C. § 4313); *see also* 20 C.F.R. § 1002.191 (2025). Under this

principle, an employee must "be reemployed in a position that

reflects with reasonable certainty the pay, benefits, seniority,

and other job prerequisites, that he or she would have attained if

not for the period of service." 20 C.F.R. § 1002.191 (2025).

       Subject to limited exceptions, an employee returning from a

service period exceeding ninety days "is entitled to reemployment

in the escalator position, but the employer may also reinstate the member in any position of like seniority, status and pay for which he is qualified." Rogers, 392 F.3d at 763; *see also* 38 U.S.C. § 4313(a)(2)(A). If an employee is not qualified to perform the escalator position or a similar one "after reasonable efforts by the employer," he must "be reemployed in the position in which he or she was employed on the date that the period of service began or in a position of like seniority, status, and pay." 20 C.F.R. § 1002.197 (2025); *see also* Rogers, 392 F.3d at 763 ("If the service member is unable to qualify for either the escalator position or a comparable position, despite reasonable employer efforts, he is entitled to reemployment in a position that is the nearest approximation to the escalator position."). An employer does not need to place a returning employee "in a better position than if he or she had remained in the civilian employment position." 20 C.F.R. § 1002.42(c) (2025).

An employer is not required to reemploy a person if: (i) "the employer's circumstances have so changed as to make such reemployment impossible or unreasonable"; (ii) reemployment under certain provisions of § 4313 (none of which apply here) would pose an undue hardship on the employer; or (iii) the employment was for a "brief, nonrecurrent period" with no reasonable expectation that it would continue indefinitely or for a significant period. 38 U.S.C. § 4312(d)(1)(A)-(C). The employer bears the burden of

Civil No. 22-203 (JDR)                                                        18

proving the "impossibility or unreasonableness, undue hardship, or the brief or nonrecurrent nature of the employment." 38 U.S.C. § 4312(d)(2). Section 4312(d)(1)(A)'s "changed circumstances" affirmative defense applies when an employer conducts "an intervening reduction in force that would have included that employee." 20 C.F.R. § 1002.139(a) (2025). Consequently, if an employee is laid off before or during his activity in the uniformed services and his employer "would not have recalled him" during that term of service, "the employee is not entitled to reemployment following the period of service simply because he or she is a covered employee." 20 C.F.R. § 1002.42(c) (2025). This defense does not apply when the employer has hired a replacement employee to "fill the reemployment position during the employee's absence, even if reemployment might require the termination of that replacement employee." 20 C.F.R. § 1002.139(a) (2025). Furthermore, these are affirmative defenses and the employer "carries the burden to prove by a preponderance of the evidence that any one or more of these defenses is applicable." 20 C.F.R. § 1002.139(d) (2025).

## V.    DISCUSSION

The *Motion for Summary Judgment* should be granted because Mr. Collins fails to show a genuine dispute of material fact exists as to whether Staghorn was motivated by his military status when

Civil No. 22-203 (JDR)                                                    19

choosing to terminate his employment and deny him reemployment. *See* Adler, 144 F.3d at 670-71.

## A. Staghorn Did Not Discriminate Against Mr. Collins in Violation of § 4311

As a preliminary matter, the parties do not dispute that Mr. Collins qualifies for USERRA's protections under §§ 4311 and 4312. (Docket Nos. 27; 42 and 43). However, there is no genuine issue of material fact that Mr. Collins' military status was not a motivating factor in Staghorn's adverse employment actions or that Staghorn would have taken the adverse employment action regardless of Mr. Collins' military status.[5] *See* Lewis, 217 Fed. Appx. at 787.

> *i. There is no genuine dispute of material fact that Staghorn's adverse employment actions were not motivated by Mr. Collins' military service*

Mr. Collins asserts that the timing of his termination "while still deployed on active duty is strong evidence that [his] termination was because of his leave on active duty." (Docket No. 42 at 12). But neither the facts found by the Court nor the parties' filings support this inference, and the record lacks any showing of discrimination. Although Mr. Collins was terminated *while* deployed with the Navy, this does not mean he was terminated *because* he was with the Navy. His termination and denial of

---

[5] The *Complaint* brings two claims: denial of reemployment in violation of §§ 4311 and 4312 and discrimination in violation of § 4311. (Docket No. 2 at 5-7). The Court discusses both alleged violations of § 4311 together, and the § 4312 claim separately because § 4311 and § 4312 claims have different requirements.

reemployment occurred in the context of various cost-saving measures taken by Staghorn during 2019 and 2020, and Mr. Collins does not establish that Staghorn was motivated by his military service to any degree when taking these actions.

Staghorn shut down its drilling program in May 2019, an important decision given that a significant portion of Mr. Collins' work revolved around Staghorn's drilling operations. (Facts ¶¶ 4, 11). Although Mr. Collins disputes Staghorn's assertion that the shutdown was necessary because of industry circumstances, his *Response* includes a chart reporting a noticeable drop in the average oil price that began in November 2018 and ran through at least December 2020. (Fact ¶ 12); (Docket No. 42 at 4). The average oil price dropped by 12.3 percent between 2018 and 2019 and by 31.2 percent between 2019 and 2020. (Fact ¶ 12). Between May 2019, when Staghorn stopped its drilling program, and February 2020, when Mr. Collins received notice of his termination, the average oil price had dropped from $60.83 USD to $50.54 USD, a 16.9 percent decrease. (Facts ¶¶ 11-12, 17).

During this time, Staghorn imposed two salary reductions on all employees in January and April 2020 and executed a series of terminations in February and March 2020. (Facts ¶¶ 16-18). These terminations included Mr. Collins and his direct supervisor, Mr. March. (Fact ¶ 17). Additionally, until his termination, Staghorn voluntarily paid Mr. Collins the difference between his private

Civil No. 22-203 (JDR)                                                                21

sector and military salaries while he was deployed with the Navy.
(Fact ¶ 15). These actions are at odds with Mr. Collins' claims
that Staghorn was angry at him for, and motivated by, his military
service when deciding to terminate him and subsequently refusing
to rehire him. Mr. Collins' statement that "[t]he only reason [Mr.
Collins] was part of the [reduction in force] was because he was
away on active duty and [Mr.] Sutcliffe was not on active duty" is
contradicted by the larger layoffs at Staghorn, Staghorn's
decision to stop its drilling programs in May 2019, the decline in
oil prices through 2019 and 2020, and the termination of his direct
supervisor Mr. March. (Facts ¶¶ 11, 12, 16-18).

    In support of his arguments, Mr. Collins submits an affidavit
from Ms. Hughes, a former Staghorn employee who was terminated in
2021. (Docket No. 42-3). She states that leading up to Mr. Collins'
termination, Staghorn's management "wanted to clean house and
replace" Mr. Collins with Mr. Sutcliffe. Id. at 2. Ms. Hughes
asserts that after Staghorn began its reductions in force, Mr.
Sutcliffe stated that he and Mr. March had "a plan for 'getting
rid of'" her and Mr. Collins. Id. at 3. Mr. Sutcliffe allegedly
told Ms. Hughes that she and Mr. Collins would be fired so he and
Mr. March could run Staghorn together, with Mr. Sutcliffe taking
over Mr. Collins' job. Id. Ms. Hughes also states that Staghorn's
management had said they needed "to be legally careful about
letting [Mr. Collins] go because of his deployment." Id.

This affidavit does not support Mr. Collins' USERRA claims because it explicitly states that Mr. Sutcliffe and Mr. March were conspiring to fire both Mr. Collins, who was serving in and a member of the military, and Ms. Hughes, who was not, to run Staghorn together. Mr. Collins' termination is discussed in the context of Staghorn's alleged desire to "clean house," which does not intimate any type of anti-military sentiment. Id. at 2. Taking the contents of the affidavit as true, the affidavit only shows that Staghorn sought to terminate Mr. Collins and Ms. Hughes to benefit Mr. Sutcliffe and Mr. March, not because of any animus towards Mr. Collins' military affiliation. Additionally, as Mr. March was himself terminated, any plan between Mr. March and Mr. Sutcliffe was unsuccessful. (Fact ¶ 17). Staghorn's need to be "legally careful" with Mr. Collins' termination indicates an intent to comply with applicable laws. The affidavit may describe instances of favoritism among Staghorn management, but the Court cannot equate this with discriminatory behavior despite giving "credence to the evidence favoring the nonmovant." Reeves, 530 U.S. at 151; see Fed. R. Civ. P. 56.

Mr. Collins also argues that Staghorn was "outright angry" at him because "of the gratuitous payments [Staghorn] volunteered to pay" Mr. Collins during his military service. (Docket No. 42 at 12-13). In support of this, Mr. Collins proffers a November 2022 email exchange between Staghorn employees discussing his alleged

overpayment. (Fact ¶ 25); (Docket No. 42-4 at 2). The emails were sent after his termination, and seem to reflect no more than indignation for, in Staghorn's view, facing a USERRA lawsuit after having voluntarily paid (and potentially overpaid) Mr. Collins a salary supplement while he was on active duty with the Navy. Id. The very existence of these payments cuts against any alleged discrimination by Staghorn, as the Court cannot conceive any realistic reason for Staghorn to voluntarily pay Mr. Collins the difference between his Staghorn and Navy salaries before promptly firing him and refusing to reemploy him because of his military service.

Other aspects of Mr. Collins' arguments, such as claims that Staghorn fabricated job titles or descriptions during the investigation of his Department of Labor complaint, are unsubstantiated in the record. (Docket No. 42 at 2-3). The recitation of an "alleged factual dispute" cannot defeat "an otherwise properly supported motion for summary judgment." Scott, 550 U.S. at 379. Similarly, his citations to the record when opposing Staghorn's proposed statements of fact correspond with exhibits that do not support the propositions they are cited for. (Docket No. 42 at 2-6). For example, Mr. Collins contested a proposed fact from Staghorn that stated the company had decided to consolidate its geology and engineering teams under a single manager to align with the company's business needs. Id. at 5. He

contends that the departments were not consolidated, and Mr.
Sutcliffe was instead promoted to a new position. Id. The exhibits
he cites to in support of this include a screenshot of Mr.
Sutcliffe's LinkedIn page and an April 2017 chart showing
Staghorn's employee hierarchy two years *before* the events giving
rise to this case, neither of which support Mr. Collins' arguments.
(Docket Nos. 42-5 and 42-6). Instead, the exhibits reflect, at
most, that Mr. Sutcliffe received a promotion to Vice President,
Geology. Id.

In sum, the Court finds that Mr. Collins has not established
that a genuine dispute of material fact exists as to whether his
affiliation with the Navy was a motivating factor in Staghorn's
adverse employment actions. Lewis, 217 Fed. Appx. at 787. Nothing
in the record shows that a genuine dispute of material fact exists
in relation to Mr. Collins' termination or Staghorn's refusal to
rehire him, even when making all inferences in his favor. *See*
Thomas, 986 F.2d at 1024. Mr. Collins' own exhibits indicate that
Staghorn did not discriminate against him due to his military
service. Summary judgment is justified on these grounds alone.

*ii. There is no genuine dispute of material fact that Staghorn
would have taken its adverse employment actions regardless
of Mr. Collins' military status*

The Court does not need to progress any further as no
reasonable jury could find for Mr. Collins due to the lack of
evidence of discrimination by Staghorn. Nevertheless, the Court

briefly discusses whether Staghorn had a legitimate basis for taking the adverse employment action and if it would have done so regardless of Mr. Collins' military status. <u>Lewis</u>, 217 Fed. Appx. at 787.

As discussed above, the facts establish that the oil and gas industry, including Staghorn, were in dire economic straits throughout 2019 and 2020. (Facts ¶¶ 11-12). Both Mr. Collins and his direct supervisor were terminated alongside 28 percent of Staghorn's workforce. (Facts ¶¶ 17-18). In addition to the reductions in force, Staghorn employees underwent two salary cuts in 2020. (Facts ¶¶ 16-18). Mr. Collins' department was combined with another department, which was overseen by a single manage. (Fact ¶ 19). Mr. Collins points to Staghorn's retention of Mr. Sutcliffe and Mr. Sutcliffe's subsequent promotion to Vice President, Geology as evidence that he could have retained his job and been reemployed by Staghorn, but both men had different job titles and job duties. (Facts ¶¶ 2-4, 8-10). Although Mr. Collins contests the nature of their duties and job titles, he does not properly establish these facts as disputed because some of his assertions are unsupported while the materials he does cite to in his claims do not reflect his assertions. (Docket No. 42); *see* <u>Graham</u>, 2022 WL 2070607, at *2 n.6. A genuine dispute of material fact cannot be manufactured from factual allegations. *See* <u>Scott</u>, 550 U.S. at 379. The Court cannot find that Mr. Sutcliffe was hired

to replace Mr. Collins, or that his career progression at Staghorn came at Mr. Collins' expense.

Furthermore, Mr. Sutcliffe's promotion occurred over a year after Mr. Collins' termination and months after Staghorn declined to reemploy him. (Facts ¶¶ 17, 22, 23, 27). This weakens any argument that Mr. Sutcliffe was chosen to replace Mr. Collins, or that Staghorn could have— but did not— choose to rehire Mr. Collins after terminating him. Mr. Collins cannot establish that he was entitled to the Vice President, Geology role, as Staghorn was under no obligation to place him in a better position than he would have been had he never reported for duty with the Navy. *See* 20 C.F.R. § 1002.42(c) (2025). Against the backdrop of a declining industry, Staghorn's multiple layoffs, including Mr. Collins and his direct supervisor, and pay cuts to remaining staff, a reasonable jury would find that Staghorn had a legitimate basis for its employment actions, and "as a matter of uncontroverted fact," would have terminated and declined to reemploy Mr. Collins regardless of his military status. Lewis, 217 Fed. App. at 787. The retention and promotion of Mr. Sutcliffe, whose duties and job appear distinct from that of Mr. Collins, does not disturb the Court's conclusion.

## B. Staghorn Did Not Deny Mr. Collins Reemployment In Violation of § 4312

Upon the end of his military service, Mr. Collins was entitled to request reemployment under USERRA because: (i) his absence from

Staghorn was necessary for his Navy service; (ii) he provided advance notice of his service to Staghorn; (iii) the cumulative length of his service-related absences did not exceed five years; (iv) he sought reemployment with Staghorn; and (v) his discharge for the Navy was not disqualifying. *See* Bradberry, 732 F.3d at 546; 20 C.F.R. § 1002.32; 38 U.S.C. §§ 4312-13; (Facts ¶¶ 13-14, 21-23). Normally, Staghorn would have been obliged to place Mr. Collins in the same position "he would have held had he remained continuously in his civilian employment." Rogers, 392 F.3d at 763; *see also* 20 C.F.R. § 1002.191 (2025). This includes any position "of like seniority, status, or pay" for which Mr. Collins would have been qualified, but not necessarily a better position than he would have been in had he never reported to the Navy. Rogers, 392 F.3d at 763; 20 C.F.R. § 1002.42(c) (2025). If Mr. Collins had been unable to fulfill an available escalator position, Staghorn would have needed to reemploy him in the same role he had before his Navy service or one of equivalent seniority, status, and pay. 20 C.F.R. § 1002.197 (2025); Rogers, 392 F.3d at 763.

However, Staghorn has shown that it did not have to reemploy Mr. Collins because its circumstances had changed such that his reemployment would have been "impossible or unreasonable." 38 U.S.C. § 4312(d)(1)(A). During Mr. Collins' military service, Staghorn instituted multiple cost-saving measures, culminating in a reduction of force that would have included Mr. Collins had he

remained at Staghorn. 20 C.F.R. § 1002.139(a) (2025); (Facts ¶¶ 16-18). As the price of oil fell, Staghorn: (i) stopped its drilling program ten months before Mr. Collins' was terminated; (ii) instituted 17 and 18 percent salary reductions both shortly before and after Mr. Collins' termination; and (iii) fired Mr. March, Mr. Collins' direct supervisor, as part of a 28 percent reduction in force that shrunk Staghorn's staff from eighteen employees to thirteen. (Facts ¶¶ 11-12, 16-18). In Mr. March's absence, Staghorn combined the engineering and geology departments under a single manager. (Fact ¶ 19). The inescapable conclusion is that Mr. Collins' position would have been eliminated in Staghorn's reduction of force even if he had not been attached to the Navy throughout late 2019 and 2020 because Staghorn took drastic measures to survive months of economic turmoil. Mr. Collins is not entitled to reemployment under USERRA on the sole basis of his status as a covered employee when he was laid off during his Navy service and Staghorn would not have recalled him during that time. *See* 20 C.F.R. § 1002.42(c) (2025). The Court's findings here mirror the Department of Labor's conclusions when dismissing Mr. Collin's USERRA complaint in 2021. (Fact ¶ 26).

As Mr. Sutcliffe was not a replacement employee hired to fill Mr. Collins' role during his absence, Staghorn was not required to terminate Mr. Sutcliffe and reinstate Mr. Collins. *See* 20 C.F.R. § 1002.139(a) (2025). Mr. Sutcliffe was hired well before Mr.

Civil No. 22-203 (JDR)                                              29

Collins reported to the Navy, promoted several months after Staghorn refused to reemploy Mr. Collins, and had different job responsibilities such that he cannot be considered a replacement employee whose job and subsequent promotion displaced Mr. Collins. (Facts ¶¶ 2-4, 8-10, 22-23, 27). As discussed in the previous section, while Mr. Collins contests the nature of Mr. Sutcliffe's job duties and the men's job titles, there is no genuine dispute of material fact because some of his assertions are unsupported while the citations for others do not reflect his assertions. (Docket No. 42); *see* Graham, 2022 WL 2070607, at *2 n.6; Scott, 550 U.S. at 379. There is insufficient discussion of the Vice President, Geology role and its responsibilities for the Court to determine if Mr. Collins was qualified for the role. Assuming Mr. Collins was able to fill the Vice President, Geology position held by Mr. Sutcliffe, he still was not entitled to it under the escalator principle if getting the promotion would have placed him in a better position than if he had never reported to the Navy. *See* 20 C.F.R. § 1002.42(c) (2025). Staghorn was not obliged to terminate Mr. Sutcliffe to provide a position for Mr. Collins. *See* id.; 20 C.F.R. § 1002.191 (2025); 38 U.S.C. § 4313(a)(2)(A). Consequently, under § 4312(d)(1)(A), there is no genuine dispute of material fact that Staghorn's refusal to rehire Mr. Collins did not violate USERRA. Given that Mr. Collins does not establish the existence of any genuine dispute of material fact for his USERRA

claims, he cannot avoid summary judgment under Fed. R. Civ. P. 56. The Court does not reach the Rule 36 discovery issues raised by the parties. (Docket Nos. 27 and 42).

### VI.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Staghorn Petroleum II, LLC's *Motion for Summary Judgment* at Docket No. 27. Judgment **DISMISSING** this action shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of July 2025.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge